# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-20083

JOHN NG-A-MANN,

Plaintiff - Appellant

v.

SEARS, ROEBUCK & COMPANY,

Defendant - Appellee

United States Court of Appeals
Fifth Circuit

**FILED**

November 19, 2015

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:14-CV-488

Before STEWART, Chief Judge, and CLEMENT and ELROD, Circuit Judges.

PER CURIAM:*

John Ng-A-Mann appeals the district court's grant of summary judgment to his employer, Sears, Roebuck & Co, on his claim of age discrimination. For the following reasons, we affirm.

Ng-A-Mann worked as a commissioned salesman at the Deerbrook Mall Sears from 2000 until his termination in 2013. During his employment, Ng-A-Mann began taking coupons that were printed for customers at the point of

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-20083

sale, withholding the coupons, and later using the coupons to induce other customers to make purchases, in violation of Sears's coupon policy. When a routine, independent audit uncovered Ng-A-Mann's activity, Jose Herrera, the Deerbrook Sears loss prevention manager, investigated and interviewed Ng-A-Mann, who admitted to using withheld coupons to incentivize other customers to purchase merchandise.

Clarence Young, the store manager, Thomas Davis, the store's district manager, and Benjamin Ramirez, a human resources lead, reviewed Herrera's findings and determined that Ng-A-Mann's conduct warranted termination. As required by Sears policy, Ramirez contacted Sears's human resources consultation services, the Associate Service Organization ("ASO"), to obtain approval of the proposed termination, noting that Ng-A-Mann had issued and redeemed coupons for price reductions in amounts ranging from $50 to $250. After receiving ASO approval, Sears fired Ng-A-Mann.

Ng-A-Mann, who was seventy-two years old at the time of his dismissal, filed suit against Sears for age discrimination. He claims that Sears wanted to downsize after many employees transferred to the Deerbrook store from a nearby Sears that had recently closed, and that Sears targeted him for termination because of his age. He maintains that at least thirty other employees misused coupons with the company's knowledge, and that none of them were discharged. Ng-A-Mann asserts that members of Sears management routinely inquired about his retirement plans and that Sears cut his hours, required him to work after closing time, and deployed him in non-sales capacities more often than it did younger employees. In response, Sears proffers a nondiscriminatory reason for Ng-A-Mann's termination: his violation of Sears's coupon policy. The district court granted Sears's summary judgment motion, finding that Ng-A-Mann failed to produce material evidence

2

that Sears used his coupon violation as a pretext for age discrimination. Ng-A-Mann timely appealed.

We review a grant of summary judgment *de novo*, viewing all evidence in the light most favorable to the nonmoving party. *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 377 (5th Cir. 2010). Summary judgment is appropriate where the evidence demonstrates that there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "An issue of material fact is genuine if a reasonable jury could return a verdict for the nonmovant." *Jackson*, 602 F.3d at 377. "A party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Celtic Marine Corp. v. James C. Justice Cos.,* 760 F.3d 477, 481 (5th Cir. 2014) (internal quotation marks and citation omitted).

The Age Discrimination in Employment Act ("ADEA") prohibits an employer from discharging an employee on account of that employee's age. *See* 29 U.S.C. § 623(a)(1); *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 474 (5th Cir. 2015). Where, as here, the plaintiff relies on circumstantial evidence of discrimination, the court applies the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green. See Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir. 2005) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). The plaintiff must first establish a prima facie case of discrimination, showing that: (1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of his discharge; and (4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age. *Jackson*, 602 F.3d at 378. The burden then shifts to the employer to proffer a legitimate, nondiscriminatory reason for its action. The plaintiff is then afforded an opportunity to "prove by a preponderance of the evidence that the

legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Goudeau*, 793 F.3d at 474 (quoting *Squyres v. Heico Cos., L.L.C.*, 782 F.3d 224, 231 (5th Cir. 2015)). A plaintiff may show pretext "either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." *Jackson*, 602 F.3d at 378–79 (internal quotation marks and citation omitted).

Here, the district court assumed, without deciding, that Ng-A-Mann established a prima facie case. Sears responded with a legitimate nondiscriminatory reason for Ng-A-Mann's termination: his violation of Sears's coupon policy. Thus, the central question facing the court was whether Ng-A-Mann could establish a genuine dispute that Sears's explanation was pretext for discrimination. After reviewing the record, we agree with the district court's conclusion that the evidence is insufficient to create a genuine issue of material fact regarding Sears's alleged discriminatory animus.

To undermine Sears's proffered explanation, Ng-A-Mann asserts that multiple members of Sears management observed, without complaint, his use of old coupons to induce sales, identifying six managers by name.[1] And he identifies other employees who similarly used old coupons, but were not punished. To rebut Ng-A-Mann's contentions, Sears argues that the audit resulting in Ng-A-Mann's termination also led to the firing of eight other

---

[1] Ng-A-Mann alludes to the district court's refusal to permit him to seek discovery regarding his coworkers or to depose Sears's affiant. He did not, however, request such discovery in the district court during conference or file a motion under Federal Rule of Civil Procedure 56(d). Ng-A-Mann did include several sentences in his opposition to Sears's summary judgment motion intimating that he required additional discovery, but it is questionable whether those sentences satisfy the relevant specificity and diligence requirements. *See McKay v. Novartis Pharm. Corp.*, 751 F.3d 694, 700 (5th Cir. 2014); *Am. Family Life Assurance Co. of Columbus v. Biles*, 714 F.3d 887, 895 (5th Cir. 2013). We need not address this issue because Ng-A-Mann has not claimed that the district court abused its discretion by denying him discovery and he has therefore waived this issue. *See* Fed. R. App. P. 28(a)(8)(A); *Procter & Gamble Co. v. Amway Corp.*, 376 F.3d 496, 499 n.1 (5th Cir. 2004) (collecting cases).

employees, ranging in ages from seventeen to twenty-four, and emphasizes that one employee violated the same coupon policy.

The employees that Sears discharged as a result of the audit were largely terminated for various fraud offenses, including unauthorized use of the associate discount, markdown fraud, and gift card fraud. Each of the terminated employees—including the employee whose violation involved coupons—personally used the rewards or coupons. Ng-A-Mann, by contrast, used coupons left behind by customers to induce other customer purchases. The violation of Sears's coupon policy is a legitimate, nondiscriminatory reason for Ng-A-Mann's firing, even if no other employees were terminated. *See, e.g.*, *Hardy v. S.F. Phosphates Ltd.*, 185 F.3d 1076, 1082–83 (10th Cir. 1999) (recognizing that employer "may have selected [an employee] as a 'sacrificial lamb,'" but finding that action legal if not based on employee's age). But Ng-A-Mann argues that the other employees' infractions were significantly more severe, and that these differences, along with his allegations that employees commonly used old coupons, cast doubt on Sears's proffered reason. Ng-A-Mann's attempts at manufacturing disparate treatment, however, fall short of creating a genuine dispute.

Ng-A-Mann endeavors to show that the coupon violations were a pretext for age discrimination by identifying younger Sears employees who also used old coupons to induce sales and were not fired. An employee can indeed use evidence of disparate treatment to show that misconduct offered as a nondiscriminatory reason for termination is actually pretextual. *Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2003). But the fact that other employees engaged in similar misconduct and were not fired is not evidence of disparate treatment if some "difference between the plaintiff's conduct and that of those alleged to be similarly situated accounts for the difference in treatment received from the employer." *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212,

No. 15-20083

221 (5th Cir. 2001); *accord Vaughn v. Woodforest Bank*, 665 F.3d 632, 637 (5th Cir. 2011) (rejecting evidence of disparate treatment because other employees had "different job responsibilities" and "dissimilar violation histories").

Ng-A-Mann's declaration notes that certain employees who violated the coupon policy were "commissioned salespeople like [him]," but says nothing about the severity or frequency of their violations aside from alleging that such coupon misuse was "common practice." He does not identify any employee flagged by the audit for violations of store policy but not disciplined, and he offers no evidence that the audit was motivated by discriminatory animus. Ng-A-Mann fails to identify with sufficient specificity a similarly situated employee who violated the coupon policy with comparable frequency and was not fired.

Ng-A-Mann also relies on alleged discriminatory comments made by Sears management. He asserts that when Young first started at the store, Young said "something like 'You must be about ready to retire.'" He also claims that Ramirez and John Richards, the brand central manager, frequently inquired after his plans to retire, and that Richards once mentioned that Ng-A-Mann "was getting too old" for his job. In response, Sears argues that such remarks fail to demonstrate age discrimination.

While "musings about eventual retirement simply do not evidence discriminatory intent," *Moore v. Eli Lilly & Co.*, 990 F.2d 812, 818 (5th Cir. 1993), persistent supervisor comments about retirement can compound other evidence that a proffered nondiscriminatory reason for terminating an employee was pretextual. *See Fitzpatrick v. Pontotoc Cty.*, 612 F. App'x 770, 775 (5th Cir. 2015). Where a plaintiff offers remarks as circumstantial evidence, alongside other alleged discriminatory conduct, he must show (1) discriminatory animus (2) on the part of the person that is either primarily responsible for the challenged employment action or by a person with influence

or leverage over the relevant decision maker. *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 441 (5th Cir. 2012); *see Rexses v. Goodyear Tire & Rubber Co.*, 401 F. App'x 866, 869 (5th Cir. 2010) ("An employer's inquiry into an employee's age and retirement plans is not by itself evidence of discriminatory intent.").

The statements offered by Ng-A-Mann fail to evidence age discrimination. In his affidavit, Ng-A-Mann states that Sears managers "brought up the subject [of his retirement] on multiple occasions." He fails, however, to demonstrate that these comments were more than a reasonable inquiry into his future plans. *See Moore*, 990 F.2d at 818. Ng-A-Mann does add that Richards told him, "shortly before [he] was fired," that he was "getting too old for [his] job." But Ng-A-Mann fails to allege what role, if any, Richards played in his termination. He produces no evidence that Richards was responsible for the employment decision, had influence over the employment decision, or was privy to the decision-making process. *See Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 226–27 (5th Cir. 2000); *see also Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 287 (6th Cir. 2012) ("Statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself [cannot] suffice to satisfy the plaintiff's burden . . . of demonstrating animus" (alterations in original) (internal quotation marks and citation omitted)).

Finally, as further evidence of discrimination, Ng-A-Mann claims that, prior to his dismissal, managers reduced his hours and sales duties, pressuring him to retire. Sears counters that many employees' hours and sales duties were reduced after consolidation of the Deerbrook location with a nearby Sears that closed, and that Ng-A-Mann was not singled out in this regard. In support, Sears provides Ng-A-Mann's employment records and a job profile description, requiring the "performance of sales-support activities." Aside from his unsubstantiated assertions, Ng-A-Mann offers no evidence to support his

arguments of disparate treatment regarding hours and job duties. His allegations of disproportionate cuts in hours and sales duties are conclusory, *see Kariuki v. Tarango*, 709 F.3d 495, 505 (5th Cir. 2013), and his arguments unconvincing and insufficient.

Even viewing the record in the light most favorable to Ng-A-Mann, he presents no competent summary judgment evidence to suggest that the employer's proffered reason was pretext. Because no genuine dispute of material fact exists as to Ng-A-Mann's claim under the ADEA, we AFFIRM.